UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kao Vang, | Civil No.: |
| Plaintiff, | |
| vs. | |
| NCC Automated Systems, Inc., d/b/a SideDrive Conveyor Co., | |
| Defendant. | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, the Plaintiff, Kao Vang, and for his cause of action against the Defendant, NCC Automated Systems, Inc., d/b/a SideDrive Conveyor Co., states as follows:

**PRELIMINARY STATEMENT**

1. This is an action brought by Plaintiff Kao Vang against Defendant NCC Automated Systems, Inc., d/b/a SideDrive Conveyor Co. to recover damages for catastrophic injuries he suffered on or about June 29, 2022 as a result of Defendant's negligent design, testing, assembly, and manufacturing, breach of express and implied warranties, and failure to provide adequate warnings of a conveyor system.

**PARTIES**

2. That Plaintiff Kao Vang, at all times material to this Complaint, resided in the City of Oakdale, County of Washington, State of Minnesota.

3. That Defendant, NCC Automated Systems, Inc., d/b/a SideDrive Conveyor Co., (hereinafter referred to as "SideDrive") is a Domestic Corporation with its principal place of business in Souderton, Pennsylvania.

1

4.  Defendant SideDrive is engaged in the business of designing, manufacturing, integrating, and installing conveyor equipment for the production of various consumer products.

## JURISDICTION AND VENUE

5.  That the Court has jurisdiction of this case under 28 U.S.C. § 1332(a) because there is a diversity of citizenship, and the matters in controversy herein involve more than $75,000 exclusive of interests and costs.

6.  That the Court has personal jurisdiction over Defendant SideDrive because they do business in the State of Minnesota including but not limited to advertising its products, shipping its products into Minnesota, and selling its products to Minnesota businesses.

7.  The venue is proper under 28 U.S.C. § 1391(b)(2).

8.  That Plaintiff Kao Vang's claims against Defendant SideDrive are timely commenced under Minn. Stat. § 541.05.

## FACTS

9.  Mr. Vang was employed as a Production Operator at ("WellPet"), an international company that manufactures pet food, where he worked on the production line at its manufacturing facility located in South St. Paul, Minnesota.

10. Mr. Vang worked on WellPet's production line, and his job duties included providing quality assurance on WellPet's pet food product by measuring samples and separating bad products from good products. Mr. Vang was stationed on a spiral conveyor system machine, Serial No. 11155, and was tasked with operating the machine and manually removing the bad product with his hands as it passed by on the machine's moving conveyor belt.

11. Upon information and belief, WellPet purchased the subject conveyor from Defendant SideDrive, who designed, planned, manufactured, integrated, and installed the spiral

conveyor system, Serial No. 11155, and all its parts, components, systems, and assemblies (hereinafter referred to as "subject conveyor") at WellPet's manufacturing facility in South St. Paul on or around October 2021.

12. Upon information and belief, as part of the transaction, WellPet specifically requested that Defendant SideDrive install a drive system guard on the subject conveyor to protect against inadvertent contact with the conveyor's open rotating sprockets, or "drive mechanism," which created a known hazard referred to as an "in-running nip point." A nip-point is a point where two or more rotating parts meet, creating a hazardous gap between them where a person's body or clothing can become trapped and drawn in as the parts, such as sprockets, continue to rotate.

13. Upon information and belief, Defendant SideDrive alleged to have installed a drive system guard on the subject conveyor pursuant to WellPet's request.

14. Upon information and belief, in early 2022, WellPet reported to Defendant SideDrive that the drive system guard was unreasonably dangerous and was developing cracks in its stainless-steel structure.

15. Upon information and belief, on or around April 2022, Defendant SideDrive was on site at WellPet's manufacturing facility in South St. Paul and removed the defective guard and replaced it with a modified guard.

16. However, the modified guard installed by Defendant SideDrive was likewise unreasonably dangerous, defective, and presented an unacceptable level of risk due to its failure to protect against or prevent contact with the in-running nip point on the drive mechanism, failure to limit guard openings and gaps between the guard and the drive mechanism, and failure to adhere to minimum reach through distance requirements to prevent contact with the drive mechanism. In

essence, the modified guard was futile and completely ineffective because it left the drive mechanism and in-running nip point open and exposed.

17. The subject conveyor as installed by Defendant SideDrive failed to install and provide adequate stop controls accessible at any point along the conveyor belt and/or where employees are known to work.

18. On June 29, 2022, Mr. Vang was working his usual shift as a Production Specialist on WellPet's production line where it was producing "Whimzees," a pet food product shaped like a stick. Suddenly and without warning, the exposed in-running nip point on the subject conveyor's drive mechanism caught the sleeve of Mr. Vang's smock around his left forearm.

19. Despite Mr. Vang's desperate efforts to free himself, the subject conveyor continued operating, the rotating sprockets slowly and continually drawing Mr. Vang into the drive mechanism, and eventually consuming his left hand and arm.

20. The exposed and hazardous drive mechanism on the subject conveyor traumatically crushed, mangled, and amputated Mr. Vang's left hand and arm, and caused severe injuries to his shoulders and neck, including fracturing and displacing his left clavicle bone.

21. As a direct and proximate result of Defendant SideDrive's negligent acts and/or omissions, Mr. Vang suffered severe bodily injury, substantial pain and suffering, disability, disfigurement, mental anguish, anxiety, depression, post-traumatic stress disorder, and loss of capacity for the enjoyment of life. Mr. Vang has also incurred loss of wages, loss of earning capacity, and substantial expenses for medical and nursing care and treatment. These losses are either permanent or continuing and Mr. Vang will continue to suffer these losses in the future.

## CAUSES OF ACTION
### COUNT ONE – NEGLIGENCE

#642356v1

22. Mr. Vang re-alleges all allegations contained in paragraph 1 through 21 and incorporate said paragraphs by reference as though fully set forth, and further states and alleges:

23. At all times material hereto and upon information and belief, Defendant SideDrive is and was engaged in the business of designing, manufacturing, placing into the stream of commerce, selling, integrating, installing, and repairing conveyor systems for use by members of the public, including the subject conveyor purchased by WellPet and used on its production line, where employees operate and work in or around the machine.

24. At all times material hereto and upon information and belief, Defendant SideDrive owed a non-delegable duty to Mr. Vang, a WellPet employee tasked with operating and working on or around the subject conveyor, to use reasonable care in the designing, manufacturing, integrating, installing, and repairing the subject conveyor and all components and parts, including all guards, to ensure the subject conveyor was safe to use.

25. Defendant SideDrive breached its duty owed to Mr. Vang by failing to use reasonable care when designing, manufacturing, integrating, installing, and repairing the subject conveyor, and all components and parts, including all guards, because it was unreasonably dangerous in that it was capable of causing serious personal injuries such as those suffered by Mr. Vang when used as intended and as specified by SideDrive, or when used in a way that SideDrive could reasonably have anticipated.

26. Defendant SideDrive's negligence consisted of, but is not limited to, the following:

   a. Failing and neglecting to use reasonable care in designing, manufacturing, integrating, installing, and repairing the subject conveyor and all components and parts, including all guards, to ensure it was safe to use and operate;

   b. Failing and neglecting to comply with applicable industry safety rules, customs, practices, and standards, including but not limited to the American National Standards Institute ("ANSI") **B11.0** (2020), by failing to ensure the subject conveyor had an acceptable level of risk and failing to provide, integrate and

    install a proper guard that prevented contact with drive mechanism on the subject conveyor;

c. Failing and neglecting to comply with applicable industry safety rules, industry customs, practices and standards, including but not limited to ANSI **B11.19 (2019)**, by failing to design and construct a guard that prevents or reduces contact with the drive mechanism on the subject conveyor, failing to limit the guard opening or gap between the equipment and the guard, and failing to adhere to minimum reach through distance requirements to prevent contact with the hazard;

d. Failing and neglecting to comply with industry applicable safety rules, industry custom and practices, and standards, including but not limited to ANSI and the American Society of Mechanical Engineers Rule **B20.1** (2018), by failing to guard the drive mechanism on the subject conveyor by providing a barrier or covering that prevented inadvertent contact with the operating components;

e. Failing and neglecting to adequately and safely warn users and operators of the subject conveyor of the dangers and risks associated with the exposed in-running nip point on the drive mechanism;

f. Failing and neglecting to provide adequate stop measures or controls to stop movement on the subject conveyor which were accessible from any point along the conveyor belt and/or to any employees while working around the subject conveyor; and

g. Other acts of negligence that may be shown by the evidence.

27. Due to the above mentioned negligent acts and/or omissions of Defendant SideDrive, the subject conveyor was unreasonably dangerous and such dangers and/or hazards were the cause of Mr. Vang's foreseeable injuries and damages.

28. At all times material hereto and upon information and belief, reasonable and feasible alternative designs existed at the time Defendant SideDrive designed, manufactured, and constructed the subject conveyor and placed it into the stream of commerce, and such alternative designs would have reduced and/or avoided exposure to a known hazard such as an exposed in-running nip point. Such reasonable and feasible alternative designs would have been safer for the general public and specifically for Mr. Vang and would have prevented Mr. Vang's injuries.

29. As a direct and proximate result of Defendant SideDrive's breach of the duty and failure to use reasonable care, the unguarded and exposed in-running nip point on the drive mechanism on the subject conveyor caught hold of Mr. Vang's sleeve, pulling his hand and arm into the drive mechanism, causing Mr. Vang to suffer the traumatic amputation of his left hand and arm, and causing other severe injuries to his shoulders and neck, resulting in severe bodily injury, substantial pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, and substantial medical and care and treatment. These losses are either permanent or continuing and Mr. Vang will continue to suffer these losses in the future.

## COUNT II – STRICT PRODUCTS LIABILITY

30. Mr. Vang realleges all allegations contained in Paragraphs 1 through 29 and incorporates the paragraphs by reference as though fully set forth and further states and alleges:

31. At all times relevant, Defendant SideDrive was and is engaged in the business of designing and placing into the stream of commerce conveyor systems for sale and/or license to use by members of the public, including the subject conveyor purchased by WellPet and used and operated by its employee, Mr. Vang.

32. The subject conveyor was defective and unreasonably dangerous when it left the possession and control of Defendant SideDrive and at the time SideDrive sold the subject conveyor to WellPet for use on WellPet's production line.

33. The subject conveyor was unreasonably dangerous because, as designed and as used as intended by Defendant SideDrive, it contained an exposed in-running nip point on its drive mechanism and/or large gaps and openings between the inadequate guard and the drive mechanism and did not comply with minimum reach through distance requirements to prevent contact with the drive mechanism, and failed to provide adequate and accessible stop mechanisms or controls,

all as set forth in Paragraph 26. Based upon information and belief, these dangers were present and known and/or should have been known or reasonably anticipated by SideDrive at the time the subject conveyor was designed and sold to WellPet and following the transaction when SideDrive attempted to make repairs to the subject conveyor.

34. The defective and unreasonably dangerous nature of the subject conveyor was the direct and proximate cause of Mr. Vang's injuries and damages in that Mr. Vang operated and worked on or around the subject conveyor as a WellPet employee, and that Defendant SideDrive's defective design caused the exposed in-running nip point on the drive mechanism to catch hold of Mr. Vang's sleeve and draw his body into the drive mechanism, crushing and amputating his hand and arm and causing other the injuries and damages as set forth herein.

35. That as a result, Defendant SideDrive is strictly liable for all Mr. Vang's injuries and damages caused by the dangerous and defective conveyor system, including but not limited to bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, aggravation of a preexisting conditions, and substantial medical and nursing care and treatment. These losses are either permanent or continuing and Mr. Vang will continue to suffer these losses in the future.

### COUNT III – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

36. Mr. Vang realleges all allegations contained in Paragraphs 1 through 35 and incorporates the paragraphs by reference as though fully set forth and further states and alleges:

37. At all times material thereto, Defendant SideDrive was a merchant with respect to the sale of goods, specifically conveyor systems and including the subject conveyor, and holds itself out as having expertise, knowledge, and skill in designing and manufacturing conveyor systems.

38.  Defendant SideDrive impliedly warranted that the subject conveyor and its parts, components, systems, and assemblies, which were sold to WellPet and installed at WellPet's manufacturing facility, were safe and fit for their ordinary purpose for which such goods are used and were not unreasonably dangerous to those who would operate or work on or around the subject conveyor in the ordinary manner intended or in a manner that could be reasonably anticipated by SideDrive.

39.  Defendant SideDrive breached its implied warranty of merchantability because the subject conveyor and its parts, components, systems, and assemblies were not safe nor fit for the ordinary purpose for which they were to be used because the hazardous in-running nip point on the drive mechanism of the conveyor was open and exposed and the guard provided and installed by SideDrive was wholly inadequate to prevent the in-running nip point on the drive mechanism to make contact with Mr. Vang and stop the drive mechanism once contact was made and as further set forth pursuant to Paragraph 26.

40.  As a direct and proximate result of Defendant SideDrive's breach of its implied warranty of merchantability, the exposed in-running nip point on the drive mechanism caught Mr. Vang's sleeve and drew him into the drive mechanism, crushing and amputating his hand and arm and causing other the injuries and damages as set forth herein.

41.  That as a result, Defendant SideDrive is liable for all Mr. Vang's injuries and damages caused by its breach of implied warranty of merchantability, including but not limited to bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, aggravation of a preexisting conditions, and substantial medical and nursing care and treatment. These losses are either permanent or continuing and Mr. Vang will continue to suffer these losses in the future.

## COUNT IV – BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

42. Mr. Vang re-alleges all allegations contained in paragraph 1 through 41 and incorporates the said paragraphs by reference as though fully set forth, and further states and alleges:

43. At all times material thereto, Defendant SideDrive was a merchant with respect to the sale of goods, specifically conveyor systems and including the subject conveyor, and holds itself out as having expertise, knowledge, and skill in designing and manufacturing conveyor systems.

44. At all times material thereto, an implied warranty of fitness for a particular purpose existed because Defendant SideDrive knew, or had reason to know, of the particular purpose for which the subject conveyor was required by WellPet and that WellPet would rely on SideDrive's expertise, skill, and judgment to select and furnish a safe, suitable conveyor system specific to WellPet's production and manufacturing needs. SideDrive also knew, or had reason to know, that WellPet did in fact rely on SideDrive's expertise, skill, and judgment when selecting and furnishing a safe, suitable conveyor system specific to its production and manufacturing needs.

45. Defendant SideDrive breached its implied warranty of fitness for a particular purpose because the subject conveyor was unsafe and unfit for the particular purposes required by WellPet in its facility when used or operated by employees such as Mr. Vang in the intended manner or in a manner reasonably anticipated by SideDrive because as set forth in Paragraph 26, the hazardous in-running nip point on the drive mechanism of the conveyor was open and exposed, the guard provided, manufactured, and installed by SideDrive was wholly inadequate to prevent contact with the in-running nip point, and any stop mechanism was inadequate and inaccessible when operated as intended or anticipated by SideDrive.

46. As a direct and proximate result of Defendant SideDrive's breach of its implied warranty of fitness for a particular purpose, the exposed in-running nip point on the drive mechanism caught Mr. Vang's sleeve and drew his body into the drive mechanism, crushing and amputating his hand and arm and causing other the injuries and damages as set forth herein.

47. That as a result, Defendant SideDrive is liable for all Mr. Vang's injuries and damages caused by its breach of implied warranty of fitness for a particular purpose, including but not limited to bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, aggravation of a preexisting conditions, and substantial medical and nursing care and treatment. These losses are either permanent or continuing and Mr. Vang will continue to suffer these losses in the future.

## COUNT V – BREACH OF EXPRESS WARRANTY

48. Mr. Vang re-alleges all allegations contained in Paragraph 1 through 47 and incorporates the said paragraphs by reference as though fully set forth, and further states and alleges:

49. At all times material thereto, Defendant SideDrive was a merchant with respect to the sale of goods, specifically conveyor systems and including the subject conveyor, and holds itself out as having expertise, knowledge, and skill in designing and manufacturing conveyor systems to be placed in production lines.

50. At all times material thereto and upon information and belief, Defendant SideDrive, knew or had reason to know of the particular purpose for which the subject conveyor was required by WellPet as well as WellPet's specific manufacturing or production needs, and SideDrive expressly warranted that the subject conveyor was not unreasonably dangerous and safe for use by operators and persons working on or around the machine.

51. At all times material thereto and upon information and belief, Defendant SideDrive expressly warranted that the subject conveyor was safe and fit for use, and not unreasonably dangerous to users and operators when used in the intended manner or in the way that could be reasonably anticipated by Defendant SideDrive.

52. Defendant SideDrive breached its express warranty because the subject conveyor was unsafe and unfit for the ordinary purposes for which it was intended to be used because the guard designed and installed by SideDrive was ineffective in that it left the hazardous in-running nip point on the drive mechanism of the conveyor open and exposed, which was wholly inadequate to prevent contact with the in-running nip point while operating or working on or around the subject conveyor, and no adequate or accessible stop mechanism was installed or provided to users and operators when using the subject conveyor in the intended manner or in the way that could be reasonably anticipated by SideDrive.

53. As a direct and proximate result of Defendant SideDrive's breach of its express warranty, the exposed in-running nip point on the drive mechanism caught Mr. Vang's sleeve and drew him in to the conveyor's drive mechanism, crushing, and amputating his hand and arm and causing other the injuries and damages as set forth herein.

54. That as a result, Defendant SideDrive is liable for all Mr. Vang's injuries and damages caused by its breach of the express warranty, including but not limited to bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, aggravation of a preexisting conditions, and substantial medical and nursing care and treatment. These losses are either permanent or continuing and Mr. Vang will continue to suffer these losses in the future.

## COUNT VI – FAILURE TO WARN/INADEQUATE WARNING

55. Mr. Vang realleges all allegations contained in Paragraphs 1 through 54 and incorporate the said paragraphs by reference as though fully set forth, and further state and allege the paragraphs by reference as though fully set forth and further states and alleges:

56. Defendant SideDrive had a duty to provide reasonably adequate and safe warnings of foreseeable risks and dangers for the use and operation of the subject conveyor, and to provide such warnings to persons operating or working on or around the subject conveyor in a manner that should have been reasonably anticipated by SideDrive.

57. Defendant SideDrive breached its duty to provide reasonably adequate and safe warnings of the foreseeable risks and dangers associated with the exposed in-running nip point and drive mechanism and/or large gaps and openings between the inadequate guard and the drive mechanism, as well as the failure to comply with minimum reach through distance requirements to prevent contact with the drive mechanism, and failure to provide adequate and accessible stop measures. SideDrive was negligent in failing to provide reasonably adequate warnings to operators and/or persons working on or around the subject conveyor of these foreseeable risks and dangers, which were known or could have been discovered through the exercise of reasonable care.

58. As a direct and proximate result of Defendant SideDrive's breach of the above duties to provide reasonably adequate and safe warnings, while Mr. Vang was operating and working on or around the subject conveyor, the exposed in-running nip point on the drive mechanism caught hold Mr. Vang's sleeve and drew him into the conveyor's drive mechanism, crushing and amputating his hand and arm and causing other the injuries and damages as set forth herein, all of where were reasonably foreseeable consequences of the hazardous exposed drive mechanism and failure to provide adequate and safe warnings of such hazard.

#642356v1

59. That as a result, Defendant SideDrive is liable for all Mr. Vang's injuries and damages caused by its breach of duties to provide reasonably adequate and safe warnings, including but not limited to bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, aggravation of a preexisting conditions, and substantial medical and nursing care and treatment. These losses are either permanent or continuing and Mr. Vang will continue to suffer these losses in the future.

## JURY DEMAND

Plaintiff Kao Vang demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kao Vang prays judgment against the above-named Defendant, NCC Automated Systems, Inc., d/b/a SideDrive Conveyor Co., for recovery of reasonable damages in an amount sufficient to fully compensate Mr. Vang for the losses and damages, together with his costs and disbursements and reasonable attorneys' fees herein.

**HUNEGS, LeNEAVE & KVAS, P.A.**

Dated: 03/15/2024

*/s/ Thomas W. Fuller*
Cortney S. LeNeave, MN ID 018424X
Thomas W. Fuller, MN ID 0394778
Isabel S. Johnson, MN ID 0402429
1000 Twelve Oaks Center Drive, Suite 101
Wayzata, MN 55391
(612) 339-4511
cleneave@hlklaw.com
tfuller@hlklaw.com
ijohnson@hlklaw.com

**ATTORNEYS FOR PLAINTIFF**

#642356v1